HAMILTON C. DANIELS *et al.*

*v.*

DANIEL B. HEARTRUNFT *et al.*

In this case the decree, not being sustained by the evidence, is for that reason reversed.

APPEAL from the Circuit Court of DuPage county; the Hon. SILVANUS WILCOX, Judge, presiding.

This was a bill in chancery, filed by Daniel B. Heartrunft and others, against Hamilton C. Daniels and Allen.C. Yundt. Upon a final hearing, the court decreed according to the prayer of the bill.   The defendants appeal.

The opinion of the court contains a sufficient statement of the case.

Mr. H. G. MILLER, Mr. HIRAM H. CODY and Messrs. VAN ARMAN & VALLETTE, for the appellants.

Messrs. HURD, BOOTH & KREAMER, for the appellees.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a suit in chancery, to compel the execution of an alleged trust, in favor of the complainants in the court below, in respect to the sum of $3080, in the hands of Daniels, the proceeds of a certain promissory note deposited in his hands by Yundt, on the 30th day of April, 1864.

Mary Ann Heartrunft, the sister of Jacob Becker, and the mother of the complainants, having had an abortion, Becker, in the presence of Daniels, accused Yundt with complicity in procuring the same, and threatened his arrest for it.   This was on Saturday evening, and Yundt, being compelled to go to Chicago on the Monday following on business, deposited the note in question in the hands of Daniels.   On what terms and conditions the note was so deposited, is the sole point in controversy.

Mrs. Heartrunft was not then expected to recover from her sickness, and she died on the next day.

No person was present when the agreement under which the note was deposited, was made, except Daniels, Becker and Yundt, and they alone were originally acquainted with the terms and conditions of the agreement, and all evidence of the trust must be derived from them.

Yundt swears, that the note was placed in Daniels' hands only as security for his (Yundt's) return from Chicago, on the Saturday night following.

Daniels swears, that it was placed in his hands as security for such return of Yundt, and also, that Yundt should pay up all the expenses of the sickness and funeral of Mrs. Heartrunft, in case she died, and for no other purpose, and explicitly denies that it was placed with him for the support of the complainants.

Becker testifies, that the note was put up to secure the payment of said expenses, and to support the complainants.

Yundt returned from Chicago to Naperville the following Saturday night, and met Becker and Daniels at the office of the latter, and, according to the testimony of Daniels and Yundt, the latter remarked that he was back again, and Becker asked if he was ready to pay those expenses. Yundt inquired how much they were. Becker figured them up at $170. Yundt said he would not pay them, and Becker said he would arrest him, then. Yundt demanded his note; Daniels told him he could not have it until he paid the expenses. Yundt said he would "sue it out of his hands." Becker told Daniels not to give up the note until Yundt paid the expenses. Daniels swears, that, at that time, no one claimed that the note was for the support of the children, and that if Yundt had paid the funeral expenses he should have given up the note to him.

Almost immediately after the deposit of said note, Mrs. Heartrunft died, and a *post mortem* examination was held for the purpose of ascertaining the cause of her death.

On this occasion, all three of these witnesses were sworn and examined, and testified fully in reference to the deposit of the note with Daniels, and the object and purposes of such deposit. Separate minutes of the testimony given then, before the coroner's jury, were taken by two different persons, and have been preserved.

Becker's testimony at that time, in speaking of the agreement to deposit the note, was, "He (Yundt) agreed to pay all expenses, and he forfeited a note of $3,000 if he did not return by

Saturday night, and pay all expenses and settle the matter up." The testimony of Daniels and Yundt was the same then, as now.

It appears that when these three witnesses were thus brought together and examined in each other's presence, within ten days after the transaction, neither of them intimated that the contract provided in any way, for the maintenance of the complainants; and the only disagreement between them was, between Yundt upon one side, and Daniels and Becker on the other, which was merely as to Yundt's obligation to pay said expenses.

It is true, it does not appear that they were asked to state whether Yundt agreed to put up the note as security for the support of these complainants, nor does it appear that they testified negatively, that such was not the agreement of Yundt. They were, however, required to, and did, each in turn, state the terms of the agreement in reference to the note; and when a witness is required to state the terms and conditions of a contract, and proposes to do so, he must be understood to state all of its terms. The fair import of the testimony of Becker, given on that occasion, is in disproof of any such trust as is here alleged, and in contradiction of his present testimony.

It must be admitted that the statements of this witness at that time, given under the same sanction and solemnity as his testimony in this case, made while the event was recent, and the matter fresh in his recollection, and before his feelings had become enlisted, as they evidently have become since, must be more reliable as evidence than his impressions recalled after so great a lapse of time.

There is the testimony of several witnesses as to their having heard certain statements made by Daniels, more or less contradictory to his testimony in this case.

This evidence, of course, can not be considered as against Yundt; its only influence is, upon the credibility of Daniels as a witness.

15—57TH ILL.

Such testimony, consisting in the repetition of oral statements, is subject to much imperfection and mistake, and ought to be received with great caution ; and it is sufficient to say of it in this case, that we do not deem it sufficient to overcome the force of the sworn statements of the witness Daniels.

As to the testimony of Daniels before the coroner's jury, it is obvious that the testimony of Williams and Cody, aided and refreshed by the full minutes of it, which they at the time took, and have preserved, is more satisfactory evidence of what it was, than the testimony of the impressions of other witnesses as to what Daniels testified to.

After a careful examination of the proofs in the case, we have come to the conclusion that the decree is not sustained by the evidence.

The decree is reversed, and the cause remanded for further proceedings in conformity hereto.

*Decree reversed.*